# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA
## COURT FILE NO.: _____

| | |
|---|---|
| Brian T. Tracy,<br><br>　　　　　　　Plaintiff,<br>v.<br><br>GE Capital Retail Bank and Asset Acceptance, LLC,<br><br>　　　　　　　Defendants. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## JURISDICTION

1. Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C § 1331.

## VENUE

2. Venue lies in this District under 28 U.S.C. § 1391(b)(2).

## PARTIES

3. Plaintiff Brian T. Tracy (hereinafter "Plaintiff") is a natural person who resides in the City of Woodbury, County of Washington, State of Minnesota. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

4. Defendant GE Capital Retail Bank (hereinafter "Defendant GECRB") is a banking corporation organized under the laws of the State of Utah with its principal place of business in the State of Utah. Defendant GECRB is a "furnisher" of consumer information as that term is used by 15 U.S.C. § 1681s-2(b) and a "person" as that term is used by 15 U.S.C. §§ 1681n(a) and 1681o(a). Defendant GECRB is

1

subject to personal jurisdiction in Minnesota because Defendant GECRB regularly lends money to consumers in Minnesota. Defendant GECRB's registered agent for service of process in the State of Minnesota is CT Corporation, 100 South Fifth Street, Minneapolis, Minnesota.

5. Defendant Asset Acceptance, LLC (hereinafter "Defendant Asset") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Michigan. Defendant Asset is a "furnisher" of consumer information as that term is used by 15 U.S.C. § 1681s-2(b) and a "person" as that term is used by 15 U.S.C. §§ 1681n(a) and 1681o(a). Defendant Asset is subject to personal jurisdiction in Minnesota because Defendant Asset regularly attempts to collect debts from consumers in Minnesota, including by reporting alleged debt of consumer in Minnesota to the credit reporting agencies. Defendant Asset's registered agent for service of process in the State of Minnesota is CT Corporation, 100 South Fifth Street, Minneapolis, Minnesota.

## FACTUAL ALLEGATIONS

6. Plaintiff has never borrowed money from Defendant GECRB by note, credit card, or any other instrument.

7. Plaintiff has never applied for credit from Defendant GECRB.

8. On information and belief, Plaintiff was the victim of identity theft in 2006.

9. In 2009 Plaintiff was contacted by Mann Bracken, a national debt collection law firm which is no longer in business, about an alleged debt to Defendant GECRB.

10. Plaintiff contacted a lawyer, who wrote a letter to Mann Bracken explaining that Plaintiff never applied for or used credit from Defendant GECRB and requesting information regarding the alleged debt and how it came to be associated with Plaintiff.

11. Plaintiff's lawyer never received a response.

12. In September 2011 Plaintiff sought a mortgage to buy a house.

13. Plaintiff's mortgage advisor obtained a report from Kroll Factual Data (hereinafter the "KFD Report"), which compiled data and credit scores from the three major credit reporting agencies, Equifax, TransUnion, and Experian.

14. The KFD Report showed that Plaintiff owed Defendant GECRB a balance of $16,719 on a credit account opened in March of 2006.

15. The KFD Report showed that Defendant GECRB had classified the account as a "profit and loss" write off.

16. The KFD Report showed that no payment was ever made on the account.

17. The KFD Report stated that Plaintiff's credit scores were negatively affected by "serious delinquency."

18. A "profit and loss" classification is considered the most serious delinquency and has a devastating impact on a consumer's credit scores.

19. Plaintiff contacted Defendant GECRB by phone and email to dispute the account as fraud and have it removed from his credit reports so that he could obtain a mortgage at the most favorable interest rate.

20. Defendant GECRB refused to remove the fraudulent account from Plaintiff's credit reports and stated that its hands were tied because it had sold the account to a third party identified as "ARS."

21. Plaintiff did not want to lose out the opportunity to buy the house that he wanted and needed to close fast.

22. Plaintiff obtained a letter from his attorney documenting attempts in 2009 to investigate the fraudulent account and Defendant GECRB's failure to provide any information in response.

23. Plaintiff provided the letter from his attorney to a loan underwriter, who agreed to approve Plaintiff for a mortgage, the fraudulent account notwithstanding.

24. Plaintiff closed on his home in November 2011.

25. Plaintiff remained committed to resolving the issue with the fraudulent account, hoping that he could refinance at a better interest rate in the future.

26. In October of 2012, Plaintiff contacted American Mortgage and Equity Consultants in Andover, Minnesota to determine if the fraudulent GECRB account was still affecting his credit rating and to evaluate his eligibility to refinance.

27. American Mortgage and Equity Consultants obtained a report from Credit Plus, Inc., (hereinafter the "Credit Plus Report"), which compiled data and credit scores from Equifax, TransUnion, and Experian.

28. The Credit Plus Report showed that Defendant GECRB was still reporting the fraudulent account as "charged off" and having an outstanding balance of $16,719.

29. The Credit Plus Report further showed that Defendant Asset, a "factoring company" was reporting that it is the new owner of an account that originated with Defendant GECRB.

30. The Credit Plus report stated that Plaintiff owed Defendant Asset $31,697.

31. On information and belief, the account reported by Defendant Asset is the same as the fraudulent account reported by Defendant GECRB.

32. The new derogatory information from Defendant Asset caused Plaintiff's credit scores to go down from the scores that appeared on the KFD Report.

33. Plaintiff went to American Mortgage and Equity Consultants hoping that the matter had cleared up and that he would be able to refinance at a favorable rate, but in fact the situation had gotten much worse, with Defendant Asset's derogatory reporting adding of the fraudulent account adding to Defendant GECRB's derogating reporting of the fraudulent account and causing Plaintiff's credit rating to plummet.

34. Plaintiff suffered extreme frustration distress after learning that the situation had gotten worse.

35. Plaintiff sent disputes to TransUnion, Experian, and CSC Credit Services advising that the account reported by Defendant GECRB and Defendant Asset was not his and was obtained by fraud.

36. TransUnion, Experian, and CSC Credit Services forwarded Plaintiff's disputes to Defendant GECRB and Defendant Asset and instructed them to investigate the completeness and accuracy of their reporting.

37. On information and belief, TransUnion, Experian, and CSC Credit Services expressly instructed Defendant GECRB and Defendant Asset to investigate whether Plaintiff was responsible for the account.

38. Defendant Asset received Plaintiff's disputes.

39. In response to Plaintiff's disputes, Defendant Asset advised Experian and CSC Credit Services that Plaintiff was responsible for the account and that the account had an outstanding balance of $31,898.

40. Defendant Asset failed to conduct a reasonable investigation of Plaintiff's disputes.

41. On information and belief, Defendant Asset did not even attempt to obtain the original contract or agreement that created the fraudulent account.

42. On information and belief, Defendant Asset did not even attempt to obtain merchant receipts from charges made to the fraudulent account.

43. On information and belief, Defendant Asset did not identify a single piece of information that would demonstrate that Plaintiff was responsible for the account.

44. If Defendant Asset had conducted a reasonable investigation of Plaintiff's disputes, Defendant Asset would have discovered either that Plaintiff was not responsible for the account or that it could not verify one way or the other that Plaintiff was responsible for the account.

45. Defendant GECRB received Plaintiff's disputes.

46. In response to Plaintiff's disputes, Defendant GECRB advised TransUnion, Experian, and CSC Credit Services that Plaintiff was responsible for the account and that the account had an outstanding balance of $16,719.

47. In response to Plaintiff's disputes, Defendant GECRB made a conscious choice not to advise TransUnion and Experian that Plaintiff disputed responsibility for the account.

48. Defendant GECRB failed to conduct a reasonable investigation of Plaintiff's disputes.

49. On information and belief, Defendant GECRB did not even attempt to obtain the original contract or agreement that created the fraudulent account.

50. On information and belief, Defendant GECRB did not even attempt to obtain merchant receipts from charges made to the fraudulent account.

51. On information and belief, Defendant GECRB did not identify a single piece of information that would demonstrate that Plaintiff was responsible for the account.

52. If Defendant GECRB had conducted a reasonable investigation of Plaintiff's disputes, Defendant GECRB would have discovered either that Plaintiff was not responsible for the account or that it could not verify one way or the other that Plaintiff was responsible for the account.

53. Plaintiff has experienced enormous mental and emotional distress and frustration as a result of Defendant GECRB's and Defendant Asset's refusals to correct their inaccurate and derogatory reporting about him.

54. Because Plaintiff's credit scores have actually gone down as a result of Defendant GECRB's and Defendant Asset's continued derogatory reporting, Plaintiff is not eligible to refinance his mortgage at a better rate, causing him out of pocket damages in the form of higher interest payments.

55. On information and belief, Defendant GECRB's and Defendant Asset's failures were based on policies and procedures to verify accounts asserted to be fraudulent even if there is no documentation to support a consumer's responsibility.

56. Defendant GECRB's and Defendant Asset's violations of the Fair Credit Reporting Act were willful.

57. Plaintiff was most recently denied credit when he attempted to purchase a couch from Slumberland on or about February 15, 2013.

58. The purchase of the couch was to be financed through an extension of credit with Wells Fargo Bank.

59. Wells Fargo Bank provided a denial letter to Plaintiff dated February 20, 2013 identifying the reason for the denial as related to the Defendants' derogatory reporting.

## TRIAL BY JURY

60. Plaintiff is entitled to and hereby demands a trial by jury.  U.S. Const. Amend. 7. Fed. R. Civ. P. 38.

## CAUSE OF ACTION

## COUNT I.

## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT –

## 15 U.S.C. § 1681, *et seq.*

## AGAINST DEFENDANTS GECRB AND ASSET

61. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

62. Defendants' prepared, compiled, issued, assembled, and communicated inaccurate, erroneous, blatantly false consumer information regarding Plaintiff, as defined in the Fair Credit Reporting Act.

63. Defendants' violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation with respect to the disputed information, by failing to review all relevant information available, and by failing to update the tradelines on Plaintiff's credit reports to accurately reflect that he was not responsible for the fraudulent account or, at a minimum, that the account was disputed.

64. Pursuant to 15 U.S.C. §§ 1681n(a)(1)(A) and 1681o(a)(1), Defendants are liable for Plaintiff's actual damages caused by their failures to reasonably investigate, review, and respond to Plaintiff's disputes, including damages for emotional and mental distress and damages for reduction of credit score and denials of credit.

65. Defendants' conduct and actions were willful, rendering Defendants liable for statutory and punitive damages in an amount to be determined at trial pursuant to 15 U.S.C. § 1681n(a).

66. Plaintiff is entitled to recover costs and attorneys' fees from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendants for:

- Actual damages in an amount to be determined at trial;
- Statutory and punitive damages in an amount to be determined at trial;
- Costs and reasonable attorneys' fees; and
- Other and further relief as may be just and proper.

Dated this 11th day of March, 2013.

By: s/Thomas J. Lyons Jr.
**CONSUMER JUSTICE CENTER, P.A.**
Thomas J. Lyons, Jr., Esq.
Attorney I.D. #: 249646
367 Commerce Court
Vadnais Heights, MN 55127
Telephone: (651) 770-9707
Facsimile: (651) 704-0907
tommycjc@aol.com

**ATTORNEY FOR PLAINTIFF**

## VERIFICATION OF COMPLAINT AND CERTIFICATION BY PLAINTIFF

STATE OF MINNESTOA )
) ss
COUNTY OF _____ )

I, Brian Tracy, having first been duly sworn and upon oath, depose and say as follows:

1. I am the Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant, cause unnecessary delay to any Defendants, or create a needless increase in the cost of litigation to any Defendants named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

s/Brian Tracy
Brian Tracy

Subscribed and sworn to before me
This 6th day of March, 2013.


s/Becky J. LaBerge
Notary Public